***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Pfeiffer.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
3. The date of the alleged injury by accident is June 2, 2002.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer/employee relationship between the parties with defendant-employer being insured by Transportation Insurance Company and administered by CNA.
5. Plaintiff's average weekly wage, pursuant to the Form 22, is $640.34, which results in a compensation rate of $427.10.
6. All parties agree that all medical records pertaining to plaintiff's physical condition may be stipulated into evidence, subject to the right of either party to depose the treating physicians subsequent to the hearing.
7. All parties agree that all rehabilitation reports may be stipulated into evidence, subject to the right of either party to depose the reporting consultant.
8. All parties agree that plaintiff collected short-term disability benefits for 13 weeks at the rate of $1,508.00 per month and that all premiums pertaining to those benefits were paid 100% by defendant-employer.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing, plaintiff was 57 years old and had a high school education. Plaintiff worked for defendant-employer as a sheet metal mechanic on two different occasions.
2. As of June 2, 2002, plaintiff had worked for defendant-employer as a sheet metal mechanic for just over one year. Plaintiff installed air conditioning ducts, which included fabricating the ducts, laying them out, and hanging them. His job required him to periodically lift, with assistance, materials weighing up to 150 pounds. During the time plaintiff worked as a sheet metal mechanic, he received at least three warnings of misconduct. In addition, plaintiff admittedly suffered from a bad back and other medical conditions prior to June 2, 2002. As of the date he last worked for defendant-employer in June 2002, plaintiff had not reported a work-related injury to his back.
3. Plaintiff testified that he felt a "pop" in his neck or back on June 2, 2002, while he was lifting a fresh air duct with co-worker Dennis Futch. He testified that he immediately reported the accident to Dennis Futch and to his foreman Ronnie Poplin. He also testified that, despite the pain, he worked the rest of his shift. Plaintiff testified that he presented to the offices of Dr. Oudeh and Dr. Dave within a couple of days and told them about his accident. However, the Full Commission finds that the evidence of record does not support plaintiff's testimony.
4. Defendant-employer's time sheets do not show either plaintiff or Mr. Futch working for Defendants on June 2, 2002. Mr. Mark Smealand, project manager for defendant-employer, testified that the time sheets were accurate, and plaintiff did not dispute them. Plaintiff testified that he must have injured himself on some other day, but he was unable to identify the correct day.
5. Plaintiff applied for short-term disability benefits and told Melissa Phillips, defendant-employer's benefits administrator, that his medical condition was not related to any work incident, but instead arose from a long-standing back condition caused by a prior motor vehicle accident. Ms. Phillips testified that the Short Term Disability Form entered into evidence was a true and accurate copy of the application she filled out based on information plaintiff gave her. The form indicates that plaintiff's conditions were not work-related. Plaintiff admitted that he reviewed and signed the document in order to collect benefits. Plaintiff collected disability benefits for 13 weeks at the rate of $1,508.00 per month on the basis of his assertions of suffering from a non-work related condition. At the hearing, plaintiff initially testified that he told Ms. Phillips that his condition was work-related, but he later admitted that he reported his condition as non-work related so that he would get more money. Ms. Phillips had several conversations with plaintiff over the next several months and plaintiff never indicated that his condition was related to work.
6. Plaintiff also told Mark Smealand, defendant-employer's project manager, that his condition was not work-related, and instead arose from a long-standing back condition caused by a prior motor vehicle accident.
7. Plaintiff had reported at least two workers' compensation claims to defendants in the past, both of which had been correctly recorded on an Industrial Commission Form 19. Ronald Poplin, plaintiff's foreman, was well-trained in safety and accident reporting, since defendant-employer had a formal program in place to report work-related injuries, and employees attend weekly safety meetings and are repeatedly instructed to notify the foreman immediately of injuries. Mr. Poplin testified that he always reported work-related accidents when he learned of them. Mr. Poplin never received notice that plaintiff had injured himself at work on or about June 2, 2002. He confirmed that plaintiff received at least three warnings of misconduct. The Full Commission finds Mr. Poplin's testimony to be credible.
8. Plaintiff's medical records do not support his allegations of having reported the alleged incident immediately to his treating physicians. On June 3, 2002, plaintiff presented to Dr. Oudeh, who noted that plaintiff had complained of back pain for several weeks. On June 7, 2002, plaintiff presented to Dr. Dave, who noted that plaintiff reported his symptoms "had started two to three months earlier without any injury or trauma." On June 12, 2002, Dr. Oudeh again evaluated plaintiff for back and neck pain, and made no notation of an accident or injury. Plaintiff presented to Dr. Dave again on June 18, 2002, when Dr. Dave noted three weeks' history of pain and indicated, "patient does not recall any injury." The Full Commission finds that the stipulated medical records directly contradict plaintiff's testimony and description of an injury by accident.
9. Plaintiff did not complete or file a North Carolina Industrial Commission Form 18 until May 3, 2003, nearly one year after his alleged accident.
10. Mr. Dennis Futch testified that plaintiff told him that his neck popped while he was lifting ductwork on June 2, 2002. Mr. Futch testified that defendant-employer laid him off, but Mr. Poplin testified that Mr. Futch's employment was involuntarily terminated for misconduct. Mr. Futch admits to being a close friend of plaintiff and stated that plaintiff may have accompanied him while he collected scrap metal. The Full Commission does not accept Mr. Futch's testimony as credible.
11. Plaintiff admittedly misrepresented his criminal history in his written, signed, and sworn interrogatory responses. Plaintiff was asked to identify all civil and criminal suits in which he had been involved, but he identified only one minor incident in Harnett County in 1985. When questioned about the response at the hearing, he admitted that within the past ten years he pled guilty and was convicted of four separate and unrelated counts of shoplifting, three separate and unrelated counts of indecent exposure, and three separate and unrelated counts of larceny.
12. Plaintiff returned to work as a delivery driver for Domino's Pizza shortly before the hearing, but admits that he continued to collect long-term disability benefits from defendants. Ms. Phillips testified that, as of the date of the hearing, defendants continued to pay plaintiff benefits and that plaintiff never advised defendants that he had returned to work. Plaintiff's testimony is contrary to his sworn, written interrogatory responses declaring to have been unemployed since June 2002.
13. Plaintiff was the subject of at least three warnings of misconduct while employed for defendants. He first testified at the hearing that he had never been the subject of misconduct warnings, but when shown the warning letters, recanted his testimony and agreed that he had received the warnings.
14. In response to a question asking plaintiff to identify prior accidents or medical conditions, plaintiff's sworn, signed, written interrogatory responses indicated only a motor vehicle accident he had been involved in when he was 15 years old. However, he admitted at the hearing during cross-examination that he suffered from polio as a child, was involved in a car accident in 1994, another car accident in 1996, and a car accident in about 2000 when he flipped over his vehicle. Plaintiff claims to have not suffered any injuries in those accidents.
15. In response to a question asking plaintiff to identify subsequent accidents or injuries, plaintiff identified none. However, plaintiff reported to Dr. Oudeh on December 12, 2002, that he had tripped on a ladder, fallen, and landed on his side, breaking his ribs and causing trauma. On January 2, 2003, plaintiff reported to a physician at Raleigh Neurosurgical that he fell out of bed, hurting his right shoulder and right head. On January 27, 2003, a physician at Raleigh Neurosurgical noted that plaintiff had fallen and injured his arm. Plaintiff first refused to admit that he had sustained these injuries, but after being shown the medical records, admitted to them.
16. The Full Commission finds that plaintiff lacks credibility with respect to this claim regarding a number of facts surrounding his alleged accident. Plaintiff has failed to prove that the back, neck, or shoulder conditions for which he sought medical treatment commencing on or about June 2, 2002, resulted from a specific traumatic incident or injury by accident occurring during the course of his employment with defendant-employer.
17. Plaintiff did not sustain an accident or incident arising out of and in the course of his employment with defendant-employer.
18. The Full Commission finds that plaintiff's counsel failed to comply with N.C. Industrial Commission Rule 701 by failing to file a Form 44 and brief pursuant to Rule 701, and failed to comply with Rule 614 by submitting an insufficient motion to withdraw as counsel and failed to respond to two inquiries by the Commission regarding the insufficient motion. As a result of these actions, the Full Commission finds that defendants have incurred reasonable attorney's fees and costs in the amount of $1,570.50, based upon an affidavit submitted by counsel for defendants.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of the credibility of witnesses who testify before it. Adams v. AVX Corp., 349 N.C. 676,509 S.E.2d 411 (1998). In this case, plaintiff's testimony that he suffered an injury as the result of a specific traumatic incident or accident in June 2002 is not credible.
2. Plaintiff did not sustain a compensable injury as the result of a specific traumatic incident of the work assigned or an accident arising out of and in the course of his employment with The Industrial Commission is the sole judge of the credibility of witnesses. N.C. Gen. Stat. § 97-2(6).
3. N.C. Industrial Commission Rule 802 provides that failure to comply with any Rules of the Commission may subject the violator to any sanctions outlined in Rule 37 of the N.C. Rules of Civil Procedure, including reasonable attorney's fees. Thus, plaintiff's counsel shall be sanctioned for failing to comply with Industrial Commission Rules 614 and 701. Defendants are entitled to attorney's fees in the amount of $1,570.50, incurred as a result of the actions of plaintiff's counsel.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits must be and under the law is hereby DENIED.
2. Plaintiff's counsel is hereby SANCTIONED for failure to comply with N.C. Industrial Commission Rules 614 and 701, and shall pay to defendants an attorney's fee in the amount of $1,570.50, pursuant to N.C. Industrial Commission Rule 802, and Rule 37 of the N.C. Rules of Civil Procedure.
3. Each side shall pay their own costs.
This 30th day of June 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER