***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Plaintiff has not shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. As a threshold matter, due to the question of jurisdiction, the issue of whether or not Plaintiff was employee or an independent contractor of Defendant-Employer, Everything But Grannies Panties, is to be determined by the Full Commission. *Page 2 
2. Everything But Grannies Panties was insured at the time of Plaintiff's alleged incident on August 25, 2009, by NC Farm Bureau Mutual Insurance Company.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged incident, and that the Defendant-Employer employed the requisite number of employees to be bound under the provisions of said Act.
 a. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter.
 b. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder.
4. If compensation is determined to be owed, the applicable average weekly wage will be determined by the Commission.
5. Plaintiff's relevant medical records, as well as the Industrial Commission documents and pleadings, may be received into evidence without further authentication or proof.
 ***********
The following were submitted at the hearing before the Deputy Commissioner:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records, Discovery Responses
3. Plaintiff's Exhibit Number 1, Plaintiff's compiled list of hours and wages with Defendant-Employer
 *********** *Page 3 
The following were received into evidence at the hearing before the Deputy Commissioner:
 DEPOSITIONS
1. Oral deposition of Kimberly Yarnall, M.D., taken on June 4, 2010.
2. Oral deposition of Kia Williams, M.D., taken on July 14, 2010.
3. Oral deposition of T. Craig Derian, M.D., taken on July 26, 2010
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 56-year old male who received his GED in 1972. His past work history includes work as a shuttle driver, cooking, housekeeping or "environmental services" at various facilities, and shipping and receiving at Wal-Mart.
2. Everything But Grannies Panties [hereinafter "Grannies"] is a business that sells antique and used merchandise.
3. Kimberly Shuffler, the owner of "Grannies," hired Plaintiff on November 5, 2007 as an employee, whose duties included coordinating the store's pickups and deliveries, driving the delivery truck, and physically loading and unloading the delivery truck.
4. Ms. Shuffler testified at the hearing before the Deputy Commissioner that Plaintiff worked consistently in this position until approximately October 11, 2008, at which time Plaintiff did not return to work at "Grannies" and he provided no notice or explanation. Ms. Shuffler further testified that in late March or April of 2009, Plaintiff called and inquired about returning to work. Ms. Shuffler testified that she agreed to hire Plaintiff as an independent contractor and that Plaintiff "would basically be [his] own boss." *Page 4 
5. From the time Plaintiff returned to work for "Grannies" in April of 2009 until August 24, 2009, Plaintiff coordinated pickups and deliveries, drove Grannies's vehicles, and loaded and unloaded the delivery truck. Plaintiff testified at the hearing before the Deputy Commissioner that if he was the first to arrive at the store, he opened the store. Ms. Shuffler provided Plaintiff with keys to all the company vehicles and to the store. Ms. Shuffler paid Plaintiff by the hour for his work and not by the load. Plaintiff could accept or refuse any delivery, but there was no evidence that he ever refused a delivery during this period.
6. Plaintiff further testified at the hearing before the Deputy Commissioner that he did not have an independent delivery truck business and in order to perform the deliveries, he relied on the delivery truck and other company vehicles of "Grannies." Based on his work experience and the nature of his work, Plaintiff required little supervision in loading and unloading the trucks for delivery. Notwithstanding this fact, however, and based on the totality of the evidence of record, the Full Commission finds that Plaintiff was an employee of "Grannies" on August 24, 2009, and was not an independent contractor.
7. On August 24, 2009, Plaintiff alleges he injured his low back while working at "Grannies." While unloading the yellow Ryder truck on the premises, another individual was asked to pull the truck up so that the back door could be opened. Plaintiff testified that the Ryder truck "all of a sudden, just came back and — bam, hit me. And I fell." Plaintiff testified he felt immediate pain in his low back and side, and could not help to remove the refrigerator off the truck.
8. Plaintiff testified that he went into the store and told the individual running the register that he "needed [his] money because [he] was hurt" and that he was going home. *Page 5 
9. Ms. Shuffler testified that on the morning of August 24, 2009, she had a confrontation with Plaintiff over the sale of a used refrigerator to a customer. Ms. Shuffler testified that she had originally offered to sell it to Plaintiff; that another customer offered to purchase the same refrigerator; that she decided to sell the existing refrigerator to the other customer; and that she was aware of an additional similar refrigerator that would be available the next day that she would sell to Plaintiff. Ms. Shuffler testified that Plaintiff was upset and could not be convinced that another refrigerator would be available for Plaintiff to purchase.
10. Ms. Shuffler testified that after her confrontation with Plaintiff, he "demanded thirty dollars, which is what he's earned that day, from Steven and he left." Ms. Shuffler testified that she had no knowledge of Plaintiff being hurt at work that morning and that Plaintiff did not appear to be hurt.
11. Plaintiff did not work for the remainder of the week and did not contact "Grannies" about his absences. The following Monday, August 31, 2009, Plaintiff called Ms. Shuffler about reporting to work on that day. Both Plaintiff and Ms. Shuffler testified that during the telephone conversation Ms. Shuffler indicated that Plaintiff had quit his job. Ms. Shuffler alleges that Plaintiff informed her that he was "going to get [her] and that [she] would be sorry." Ms. Shuffler testified that Plaintiff did not report any physical problems to her during the telephone conversation, but was actually asking for his job back.
12. Ashley's Unique Boutique, a business similar to "Grannies," is across a four lane highway from "Grannies." The business owner, Gloria Morissey, testified at the hearing before the Deputy Commissioner that for a three day period, from September 8 to September 10, 2009, Plaintiff worked for Ashley's Unique Boutique. Ms. Morrisey testified that Plaintiff contacted her for work and when asked why he no longer worked at "Grannies," Plaintiff replied that he *Page 6 
"went in that morning, he met the customer coming out with the freezer and he just got upset, mad, and he walked off." Ms. Morrisey alleges that Plaintiff made a statement that he was "going to get her," referring to Ms. Shuffler.
13. Ms. Morrisey testified that Plaintiff worked for her during a portion of the day on September 8, 2009. On September 9, 2009, Ms. Morrisey and Plaintiff drove her van to Greensboro to load boxes from an 18-wheeler trailer into her van. Ms. Morrisey testified that Plaintiff worked for several hours, loading heavy boxes from the back of the 18-wheeler trailer into Ms. Morrisey's work van. Prior to leaving Greensboro, one of the van's tires became flat and Ms. Morrisey testified that Plaintiff changed the tire without difficulty. Ms. Morrisey and Plaintiff returned to Durham on September 9, 2009, at which time Plaintiff unloaded some items and then indicated that he needed to leave work at that time so he could take the ride home that was available.
14. On September 10, 2009, Plaintiff returned to help Ms. Morrisey continue to unload the van. Ms. Morrisey testified that when the store ran out of space for items taken out of the van, Plaintiff put the rest of the boxes in the attic, which is accessible by a pull-down wooden ladder. Plaintiff also cut Ms. Morrisey's grass. Ms. Morrisey testified that Plaintiff did not appear to have any difficulties performing these tasks. This was the last day that Plaintiff did any work for Ms. Morrisey.
15. On September 14, 2009, Plaintiff completed a Form 18 with an injury date of August 25, 2009. The Form 18 lists the following body parts: left shoulder, left arm, right lower back, and right leg.
16. On September 16, 2009, Plaintiff sought medical treatment for the first time since the alleged injury at the University of North Carolina ("UNC") Hospitals' Emergency Room. *Page 7 
The medical record reflects that Plaintiff complained of back pain after being struck by a truck and almost falling to the ground. The clinical impression was "acute right sided sciatica and osteoarthritis in the left shoulder."
17. On September 18, 2009, Plaintiff presented to Dr. Kia Williams at UNC Family Medicine at Hillsborough for "pain and numbness and tingling that runs down the entire leg." The medical record reflects that Plaintiff "went to ER and x-ray was negative except for some degenerative changes at L5-S1 and old fx [fracture]." Dr. Williams diagnosed Plaintiff with sciatica and referred him to an orthopaedic specialist, if symptoms worsen.
18. Plaintiff continued to seek medical treatment and complained of leg and back pain, and on December 16, 2009, Plaintiff sought a medication refill and was provided a one-time prescription of Vicodin.
19. On April 14, 2010, Plaintiff presented to Dr. T. Craig Derian, an orthopedist. Plaintiff complained of "low back pain, right greater than left lower extremity symptoms." Dr. Derian diagnosed Plaintiff with isthmic spondylolisthesis at L5-S1, and recommended that Plaintiff return to work in sedentary, light duty employment with no lifting over 10 pounds and frequent changes in position.
20. The totality of the competent evidence of the record establishes and the Full Commission finds the defense witnesses' testimony more credible than Plaintiff's testimony.
21. The Full Commission finds, by the greater weight of the evidence, that Plaintiff did not suffer an injury by accident on August 24, 2009.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following: *Page 8 
 CONCLUSIONS OF LAW
1. To establish a claim for workers' compensation, a plaintiff has the burden of proving that he was an employee of defendant rather than an independent contractor. In Hayes v. Board of Trustees ofElon College et al, 224 N.C. 11, 29 S.E.2d 137 (1944), the Supreme Court set out several attributes to consider in determining whether a person is an independent contractor rather than an employee. These include:
 (a) whether the person is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistant; and (h) selects his own time.
Id. The Supreme Court further held that the presence of all the factors is not necessary but should be considered along with all other circumstances. Id. Considering these factors along with the particular circumstances in the case at hand, Plaintiff was an employee of Defendant-Employer. Thus all the parties to this action are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(2).
2. The Industrial Commission is the sole judge of the credibility of witnesses. Adams v. AVX Corp.,349 N.C. 676, 509 S.E.2d 411 (1998). In this case, Plaintiff's testimony is not deemed credible in light of all the competent evidence of record.
3. Plaintiff failed to prove, by the greater weight of the evidence, that he sustained a compensable injury by accident on August 24, 2009. N.C. Gen. Stat. § 97-2(6).
 ************ *Page 9 
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the Act is HEREBY DENIED.
2. Each side shall bear its own costs.
This the ___ day of May 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1